IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:                                )
MOUNT HOPEWELL MISSIONARY             )     Chapter 11
BAPTIST CHURCH, INC.                  )     Case No. 308-00860
                                      )     Judge Keith M. Lundin
    Debtor.                           )

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
WITH COMBINED DISCLOSURE STATEMENT**

Mount Hopewell Missionary Baptist Church, Debtor-in-possession (the "Debtor"), submits this Chapter 11 Plan of Reorganization with Combined Disclosure Statement (the "Plan and Disclosure Statement") pursuant to 11 U.S.C. § 1125(f) for use in soliciting acceptances of confirmation.

## I. INTRODUCTION

On February 1, 2008, a Chapter 11 petition was filed by the Debtor. Since the filing of the petition, the Debtor has remained in possession of its property and continued the operation of Mount Hopewell Missionary Baptist Church. This case is a small business case as defined by and referred to in various sections of the Bankruptcy Code.

By order of this Court the Debtor employed Kevin S. Key as counsel and Michael Castellarin as special counsel. No Trustee has been appointed and no committee of unsecured creditors was appointed by the U.S. Trustee.

The purpose of a disclosure statement is to provide the holders of claims against the Debtors with adequate information about Debtors and their assets and debts sufficient to enable such holders to make an informed judgment about the merits of approving the Plan.

Certain terms are defined below, Where those terms are capitalized in this Plan and Disclosure Statement, they have defined meaning.

The Debtor's Plan provides for the satisfaction of claims from the continued operations of the Debtor and from recovery of a lawsuit against the contractor. The Debtor anticipates that cash available as disposal income will be sufficient to make the payments described below.

1

NO REPRESENTATIONS CONCERNING THE DEBTOR OTHER THAN AS SET FORTH IN THIS PLAN AND DISCLOSURE STATEMENT ARE AUTHORIZED BY DEBTOR.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE THAT ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION.

THE INFORMATION CONTAINED IN THIS PLAN AND DISCLOSURE STATEMENT HAS BEEN DERIVED FROM SOURCES THAT DEBTOR BELIEVES TO BE RELIABLE BUT HAS NOT BEEN INDEPENDENTLY VERIFIED IN EVERY INSTANCE AND HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT.  EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT ACCURATE INFORMATION.  HOWEVER, THE ACCURACY OF THE INFORMATION CONTAINED HEREIN CANNOT BE GUARANTEED.

## II.  DEFINITIONS

For purposes of this Plan and Disclosure Statement, the following terms shall have the respective meanings hereinafter set forth (such meanings to be equally applicable to both the singular and plural forms of such terms defined unless otherwise stated.)  A term used in the Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning set forth in the Code.

1. "Allowed Administrative Expense" shall mean any cost or expense of administration in connection with these Chapter 11 cases having priority in accordance with all applicable sections of the Code, including but not limited to, any actual and necessary expenses of operating or liquidating the business of the Debtor as allowed by the Court and all allowances of compensation or reimbursement of expenses to the extent allowed by the Code and the Rules upon Final Order of the Court.

2. "Allowed Claim" or "Allowed" with respect to a Claim, shall mean (a) any undisputed, liquidated and non-contingent Claim whose amount was properly listed in the Debtor's Schedules and for which no contrary proof of claim has been filed, and that it not otherwise a Disputed Claim, or (b) any Claim that has been timely filed prior to the Bar Date with the Clerk of the Court by the Holder of the Claim and to which Claim no written objection to the allowance thereof has been interposed within the period of time fixed by the Code or by a Final Order of the Court, or as to which Claim an objection to the Claim has resulted in the allowance of a claim, in whole or in part, by a Final Order of the Court.

3. "Avoidance Actions" shall mean any bankruptcy recovery and avoidance actions available to the Debtors under Chapter 5 of the Bankruptcy Code.

4. "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et seq. And any amendments thereto.

5. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

6. "Bar Date" shall mean July 1, 2008, the date fixed by Final Order of the Court, by which all Holders of Claims against the Debtors were to have timely filed a Proof of Claim with the Clerk of the Court.

7. "Cash" shall mean cash, cash equivalents and other readily marketable securities or instruments, including but not limited to, proceeds, direct obligations of the United States of America, certificates of deposits issued by banks, and commercial paper of any entity.

8. "Causes of Action" shall mean all rights, claims and causes of action of any kind or nature, whether legal or equitable, of the Debtor's estate for affirmative recovery of Cash or other property belonging to the estate (whether such causes of action are the subject of presently pending lawsuits, adversary proceedings or appeals, or otherwise) which accrued before the Confirmation Date or may thereafter accrue, whether from matters that occurred prior to or after the Confirmation Date, including, but not limited it, any state law rights or claims but not including, any and all Avoidance Actions.

9. "Claim" shall mean any claim as defined by § 101(5) of the Code and any other debt or obligation of whatever kind or nature held against the Debtor as of the Petition Date.

10. "Claim Account" shall mean the account established by the Debtor on or before the Effective Date of the Plan into which the Reorganized Debtor shall deposit such amounts as are necessary to fund the payments to be made to Class 2 Claimants under the Plan.

11. "Claimant" shall mean any Holder of a claim that arose on or before the Petition Date or a Claim against the Debtor's estate of a kind specified in § 502(g), § 502(h) or § 502(I) of the Code.

12. "Class" shall mean a category of Claims, the Holders of which hold substantially similar Claims.

13. "Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et seq. And any amendments thereto.

14. "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Court.

15. "Confirmation Order" shall mean the Final Order entered by the Court confirming the Plan.

` 16. "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division, including any bankruptcy judge thereof, and any court having competent jurisdiction to review orders of, or to hear appeals from the bankruptcy judge(s) thereof.

3

17	"Debtor" or "Debtors" shall collectively mean Mount Hopewell Missionary Baptist Church.

18	"Debtor's Assets" shall mean all the property, rights, claims and interests of the Debtor, including all Real Property or Personal Property, whether tangible or intangible, and any proceeds thereof.

19.	"Deficiency Claim" shall mean a Claim against the Debtor equal to the amount by which the aggregate Claim exceeds the sum of (a) any setoff rights of the holder against the Debtors, plus (b) the net proceeds realized from the disposition of the collateral securing such Claim or, if such collateral is not liquidated to Cash, the value of the interest of the Holder in Debtor's interest in the collateral securing such Claim; provided, however, that if the Holder of such Claim makes the election provided in § 1111(b) of the Code or such Claim is a non-recourse claim or obligation, there shall be no Deficiency Claim with respect to such claim.

20.	"Disclosure Statement" shall mean the disclosure statement made part of the Plan pursuant to § 1125(f) of the Bankruptcy Code, as may be modified or amended from time to time, including all exhibits and attachments thereto.

21.	"Disputed Claims" shall mean a Claim as to which written objection to the allowance or classification thereof, in whole or in part, has been timely filed by any party in interest and as to which no Final Order or Final Judgment sustaining such objection or allowing or disallowing such Claim, in whole or in part, has been entered by the Court.

22.	"Distribution Date" shall mean the $3^{0th}$ day of each consecutive month following the Effective Date, on which the Debtor shall make distributions s provided for in the Plan.

23.	"Effective Date" shall mean ninety (90) days after the Confirmation Order becomes final.

24.	"Final Order" or "Final Judgment" shall mean an order or judgment of the Court (a) as to which the time to appeal, petition for certiorari, or seek re-argument or rehearing has expired and as to which no appeal, re-argument, certiorari petition, or rehearing is pending, or (b) if an appeal, re-argument, certiorari or rehearing thereof has been sought, the order of the Court has been affirmed by the highest court to which the order was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired.

25.	"General Unsecured Claim" shall mean an Allowed Unsecured Claim that is not a Subordinated Claim.

26. "Holder" shall mean the Person holding a Claim, which was listed in the Debtor's schedules or filed with the Court or the Person to whom such Claim was last transferred by Final Order or Final Judgment of the Court substituting the transferee for the prior Holder thereof.

27. "Paid in Full" or "Pay in Full" shall mean, with respect to an Allowed Claim, either (a) the payment of the principal balance and all interest accrued on that principal balance prior to the Petition Date, or (b) the payment of an Allowed Claim in accordance within agreement entered into between the Debtor and Holder prior to the Petition Date, c) payment of the Allowed Claim as provided for in the Plan, or (d) the satisfaction and release of an Allowed Claim by any other means.

28. "Personal Property" shall mean all Cash, accounts receivables, contract rights (including all insurance policies), claims, Causes of Action (but not including Avoidance Actions) and general intangibles; all deposits and prepayments; leasehold improvements, office equipment, computer equipment, furniture, fixtures, materials, supplies, records, and all other tangible or intangible personal property used for the operation of the Debtor's business or owned by the Debtor.

29. "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization or governmental unit, or any agency or political subdivision of a governmental unit.

30. "Petition Date" shall mean February 1, 2008, the date on which Debtor sought relief under the Bankruptcy Code.

31. "Plan" shall mean this Plan of Reorganization and any amendment thereto and modification thereof.

32. "Plan Proponents" shall mean the Debtor, as set forth in the introductory paragraph of the Plan.

33. "Post-Petition" shall mean the time on or after the Petition Date.

34. "Post-Confirmation Expenses" shall mean all expenses reasonably incurred subsequent to the Confirmation Date in consummating this Plan, including but not limited to fees and expenses of counsel, accountants and other professionals hired by the Dissolution Agent.

35. "Pre-Petition" shall mean the time prior to the Petition Date.

36. "Priority Claim" shall mean an Allowed Unsecured Claim entitled to priority under § 507 of the Code.

37. "Pro Rata' shall mean in the same proportion that the amount of an Allowed Claim in any Class of Claims bears to the aggregate amount of all Claims in such Class, including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims which may apply to that Class of Claims as of the date of any distribution payment made pursuant to this Plan.

38. "Real Property" shall mean any and all interests of the Debtor in any and all real property, buildings or improvements owned either legally or equitably by the Debtor, and all fixtures (including trade fixtures) and appurtenances.

39. "Reorganized Debtors" shall refer to the Debtor after the Confirmation Date.

40. "Rules" shall mean all rules applicable to or adopted by the Court, including but not limited to the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the Court.

41. "Secured Claim" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value, determined in accordance with § 506(a) and § 506(b) of the Code, of the interest of the Holder of such Allowed Claim in the Debtor's interest in such property, or to the extent of the amount subject to such setoff, as the case may be, and reduced by such further amount or amounts, if any, as may be determined by the Court after notice and a hearing to be the reasonable and necessary costs and expenses of preserving and disposing of such asset pursuant to § 506(c) of the code.

42. "Tax Claim" shall mean an Allowed Claim entitled to priority under § 507(a)(8) of the Code. Tax Claim does not include *ad valorem* tax claims if those Claims under applicable state law are secured by a lien on real or personal property.

43. "Unsecured Claim" shall mean any Allowed Claim which is not a Secured Claim, including but not limited to: (a) deficiency claims of secured creditors; (b) claims under executory contracts and unexpired leases that have heretofore been rejected, that are rejected under this Plan or that may be rejected prior to the Confirmation Date; c) Claims of general trade creditors; and (d) any other obligations, liabilities, damages or any other Claim held against the Debtor of every type and nature whatsoever incurred on or before the Petition Date, including without limitation, (I) all demands, causes of action, debts, obligations, liabilities (including contingent and unliquidated); (ii)_ all demands, causes of action, regulatory actions, debts, obligations, liabilities (including contingent and unliquidated) and all other claims of any nature by any person, entity, or governmental authority arising out of circumstances occurring before the Petition Date; and (iii) claims and demands of any kind or nature made in lawsuits filed Pre-Petition against the Debtor, whether or not the parties to such lawsuits have been given relief under § 362 of the Bankruptcy Code.

44. Unless otherwise stated, all other terms shall have the meaning given to them under the Bankruptcy Code or Bankruptcy Rules.

### III.  HISTORY OF THE DEBTOR

A. <u>Nature of the Business and History of the Debtor</u>

Mount Hopewell Missionary Baptist Church is a long time church which was established in the Donelson area soon after the Civil War. Because of the change in the demographics of the area in the 1970s the Church purchased property in the Bordeaux area of Nashville. Finally in the early 2000s the Church made the decision to complete the transition to the new property at 2911 Stokers Lane.

This has led to a growth in the membership of the Church because of location closer to both present and potential members.

B. <u>Circumstances Leading to Current Financial Situation</u>

The Debtor entered into a contract with Kiddway Construction on October 30, 2004 for the completion of the building of the new church facility.

The contract price was for $1,480,604.00. Subsequently the contractor not only over ran the cost, well above any change orders which were reimbursed, but other unpaid sub-contractors filed for liens pursuant to Tennessee Code Section 66-11-101 *et seq.* The Debtor paid $103,788.09 to settle these liens.

The initial plan was for the church to have $200,000 in reserve to comfortably fund the transition into the new facility and service the note. These funds were depleted by the actions of the contractor who has admitted to church members that funds were diverted to other projects of the contractor.

The current note was entered into in May, 2007. A potentially large lien was still available and the lender required that the funds would be reserved to pay this lien should it be timely asserted. The Debtor was told that the funds would be returned to the church if the lien was not filed timely. Church officials were told that their first few payments would be credited to the first few payments due under the note.

The Debtor did make additional payments but the lender sought to foreclose on February 1, 2008. This Chapter 11 was ensued.

### IV.  PROGRESS OF THE CASE TO DATE

The Debtor has continued as a debtor-in-possession and has continued to receive contributions from members and attendees of the church services. After approval of

7

Michael C. Castellarin, as special attorney for the Debtor, a lawsuit has continued in Chancery Court to recover funds against the contractor. This matter is still in discovery.

The monthly operating reports filed by the Debtor are available through the Bankruptcy Court's website at www.tnb.uscourts.gov or by request to the Debtor's bankruptcy counsel, Kevin S. Key, at the address below.

By an agreed order with the Office of the United States Trustee entered on the 19th day of February, 2008, the Debtor agreed that this was a small business case within the meaning of the Bankruptcy Code. The Debtor has also agreed to various administration obligations and to certain scheduling deadlines, including, specifically, the filing of a Plan of Reorganization on or before the 27th day of November, 2008 and the confirmation of a Plan no later than January 1, 2009.

Also, because of the simplicity of the matter the Debtor has entered into an agreed order with the sole secured creditor to have a Chapter 11 Plan proposed by April 15,2008 and confirmed by June 1, 2008.

At the time of foreclosure the Debtor was seeking to refinance the note held by Foundation Capital Resources and had made application to several banks. Post petition Pinnacle Bank offered to refinance the note held by Foundation Capital Resources but the Debtor informed Pinnacle Bank of the intervening Chapter 11 and the offer was rescinded. In addition, Mount Hopewell Community Development Corporation will begin to operate the day care center in the church by June 1st, 2008. This will result in $3,000.00 per month rent which will be used to defray the note to the secured lender.

## V. DEBTOR'S ASSETS

The following are the major assets or categories of assets of the Debtor:

A. Cash

As of the Petition Date, the Debtor had cash on hand of approximately $6,000.00.

B. Real Property

The Debtor owns 2911 Stokers Lane, Nashville, Tennessee. The Debtor states that the value of this property is $2.2 million based on an appraisal of February 12, 2007 which was relied upon by Foundation Capital for its loan.

C. Pre-Petition Lawsuit filed on behalf of Debtor

As of the filing date the Debtor was a plaintiff in a suit against Kidway Construction in the Davidson County Chancery Court for aforesaid cost overruns and other damages,

8

which total $362,221.18 plus attorney's fees and pre-judgment interest. The lawsuit is well into discovery and will be referred to mediation.

    D.    <u>Personal Property</u>

The Debtor owns various tangible personal property in association of the operation of a church including musical instruments, Bibles, chairs, tables, kitchen equipment and office equipment in an estimated value of approximately $267,000.

    E.    <u>Preferences, Other Avoidance Recoveries and Miscellaneous Causes of Action</u>

The Plan proves that the Debtor will retain and may enforce any action for the avoidance and recovery of preferences under sections 547 and 550 of the Bankruptcy Code, and any other avoidable transaction. The Debtor does not anticipate any such causes of action.

### VI. DEBTOR'S LIABILITIES

    A.    <u>Secured Claims</u>

Foundation Capital Resources has a first mortgage on the Debtor's property at 2911 Stokers Lane, Nashville, Tennessee. The balance of the mortgage is approximately $1.6 million.

    B.    <u>Claims Entitled to Priority</u>

The IRS has filed a claim for the first quarter 941 taxes for employees of the Church.

    1.    <u>Administrative Expenses</u>

The Debtor has remained current with respect to its post-petition obligations. In addition, Debtor's counsel and other professional persons employed during the case with the approval of the Court are treated as administrative expenses of the Chapter 11 case. Kevin S. Key received a retainer in the amount of $3,000 from the Debtor. No additional fees have been accrued. Total fees if any would be less than $10,000.

Michael Castellarin was employed as special counsel for the prosecution of the Chancery Court case. No retainer was paid and as yet no fees are approved. Debtor's counsel anticipates that some kind of payment will be agreed to with the Debtor for the payment of these fees once allowed.

Fees due the United States Trustee pursuant to 28 U.S.C. § 1930 are also

9

accorded priority under 11 U.S.C. § 507(a). The fees expected to be incurred during this case are expected to cover two quarters. The first and second quarters of 2008.

  2. <u>Tax claims</u>

The Debtor has received a 941 claim from the Internal Revenue Service for 941 taxes due after the time of filing. These were paid in the normal course of business.

  C. <u>Unsecured Claims Without Priority</u>

The Debtor's schedule of debts for unsecured claims along with claims filed are under $100,000. The Debtor has a motion pending to set a bar date of July 1, 2008.

### VII. THE PLAN

  A. <u>Administrative Expenses</u>

On the effective date of the Plan, any unpaid claims of Allowed Administrative Claims shall be paid in full in cash unless the holder of such claim agrees to a different treatment, provided, however, that no claim for reasonable fees and actual necessary costs and expenses of attorneys, accountants, or any other professional authorized by the Court to be employed in this case shall be paid until the entry of a Final Order allowing each such aware of compensation.

  B. <u>Priority Tax Claims</u>

There are no known priority tax claims.

  C. <u>Classification and Treatment of Claims</u>

The claims of creditors and interests of equity security holders are divided into the following classes:

  Class 1: Class 1 shall consist of the Secured Claim held by Foundation Capital, secured by a first mortgage on the Debtor's property at 2116 Stokers Lane. This creditor shall be referred to as "Class 1 Claimant". The Class 1 Claimant shall be treated as holding fully secured Allowed Claim, which will be paid in full beginning thirty (30) days from the effective date of the Confirmation of this Plan. In addition, the secured creditor shall receive all net proceeds from the subdivision and sale of the Debtor's property to Mount Hopewell Missionary Baptist Church Development Corporation, a separate entity. This lot consists of 2.71 acres of the total 7.43 acreage. Mount Hopewell Missionary Baptist Church Development Corporation has the rights to a loan and grant for the development of an assisted living facility for the elderly. The gross sales price of this portion of the land is $250,000. All proceeds of this lot shall be remitted to the secured

creditor towards the satisfaction of its debt and reduction of the principal. This sale is anticipated to occur in September, 2008.

  Class 2: Class 2 shall consist of all unsecured claims.

  Once the bar date of July 1, 2008 has run the Debtor will have 30 days to object to any unliquidated, contingent or disputed claims by filing an objection with this Court.

  D. <u>Impaired Classes and Voting</u>

  1. <u>Unimpaired Classes</u>.  Class 1 is unimpaired.  Each Holder of a claim in such Class is conclusively presumed to have accepted the Plan and is not entitled to vote thereon.

  2. <u>Impaired Classes</u>.  All other Classes are impaired under the Plan. The Holders of Claims in these Classes are entitled to vote to accept or reject the Plan.

  E. <u>Means for Execution of the Plan and Proposed Distribution to Unsecured Claimants</u>

  The Debtor will pay $12,000 per month at contract rate until the loan with Foundation Capital is paid in full.  All net proceeds from the sale of the 2.71 acres will be applied to any late fees, accumulated interest, attorney's fees and then to principal.

  The unsecured creditors will be paid two percent (2%) of their allowed claims beginning thirty (30) days after the effective date unless the creditor and the Debtor agree otherwise. These funds shall be paid out of current collections and proceeds, if any of the Davidson County Chancery lawsuit against Kiddway Construction.

  F. <u>Summary of Other Provisions of the Plan</u>

  1. <u>Executory Contracts</u>.  Debtor reserves the right, at any time prior to the Effective Date, to move for the assumption, assumption and assignment, or rejection of any executory contracts or unexpired leases under § 365 of the Code with the approval of the Court.  Any executory contract or unexpired lease not assumed under the terms of the Plan or by separate order of this Court prior to the Confirmation Date of the Plan shall be deemed rejected on the Confirmation Date of the Plan.  Any Claims arising from the rejection of executory contracts or unexpired leases must be filed within the time period set forth in the Bankruptcy Code and shall constitute a Class 2 Unsecured Claim.  The Debtor is not aware of any executory contracts.

  2. <u>Claim Account</u>.  By no later than the Effective Date of the Plan, the Reorganized Debtor shall establish a separate, interest-bearing account into which the

11

Reorganized Debtor shall deposit such amounts as are necessary to fund the proposed payments to Class 2 Claimants and from which payments shall be made on the Distribution Date. Accrued interest on the funds in the Claim Account shall be distributed on a pro rata basis to Class 2 Claimants with the final distribution.

    3.   <u>General Provisions</u>.

    a.   Notwithstanding any other provision of this Plan, each Claim shall be paid only after it has been allowed in accordance with the Code.

    b.   Pursuant to § 1123(b)(3)(B) of the Code, Debtor shall retain each and every claim, demand or cause of action whatsoever which Debtor or Debtor-in-Possession had or had power to assert immediately prior to confirmation of the Plan, including, without limitation, actions for the avoidance and recovery pursuant to Section 550 of the Code of transfers avoidable by reason of Sections 544, 545, 547, 548, 549 or 553(b) of the Code, and Debtor may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of the same.

    c.   All fees payable under 28 U.S.C. § 1930, for quarters ending prior to the Effective Date shall be paid in full in cash on the Effective Date of the Plan. Any fees due the U.S. Trustee for quarters ending after the Effective Date and prior to closure shall be paid by the Reorganized Debtors.

    d.   Pursuant to § 1141(d)(5)(A), the Confirmation Order shall discharge all claims held against Debtor and shall constitute an injunction against the pursuit of any claim or interest except as otherwise provided in the Plan, and holders of claims and interests shall be precluded from asserting against Debtor or Debtor's assets any claim or interest based upon any act or commission, transaction or other activity that occurred prior to the Confirmation Date except as otherwise provided in the Plan.

    e.   Debtor shall file the final report and accounting with the Court and request this case be closed at the earliest possible date. Debtor anticipates filing a final report and accounting by no later than 30 days after the first Distribution Date.

    f.   With respect to any distribution prior to the final distribution, if the Holder of an Allowed Claim would receive less than $50, the Reorganized Debtors may choose not to distribute such lesser amount to such Holder, but may instead defer the distribution thereof until the cumulative amount to be distributed to such Holder on any subsequent Distribution Date is $50 or more.

    (I)  Subject to Bankruptcy Rule 9010, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proof of claim filed by such Holder (or at the last known addresses of such Holders if no proof of Claim is filed or if the Reorganized Debtor has been notified by the Holder of the Allowed Claim of a change of address). If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made and such Holder shall be deemed

to have forfeited its distribution.  Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtor and shall be distributed pro rata in accordance with the provisions for order of payment in the Plan.

(ii)   Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a commercial bank, savings bank, industrial savings bank, savings and loan association, or trust company chartered by the United States of America or any State, Commonwealth, District or Territory thereof (a "Domestic Financial Institution").  At the option of the Reorganized Debtor, payments may be made by wire transfer from a Domestic Financial Institution.

(iii)   Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and fund if not cashed within sixty (60) days after the date of issuance and shall be deemed unclaimed.  The Creditor to whom such distribution was sent shall be deemed to have forfeited the distribution and shall not be entitled to any other distribution.  Unclaimed funds from any interim distribution shall be distributed by the Reorganized Debtor on a pro-rata basis in accordance with the provisions for order of payment in the Plan.  Any unclaimed funds remaining after the final distribution by the Reorganized Debtor shall revert to and revest as property of the Reorganized Debtor.

4.     <u>Provisions for Modification of the Plan</u>.  Debtor may propose amendments or modifications of this Plan at any time prior to the time that the Confirmation Order becomes a Final Order, with leave of the Court, upon notice to appropriate parties.  After confirmation, Debtor may, after notice to parties in interest and with approval of the Court, modify the Plan in accordance with § 1127(e) of the Code.

5.     <u>Provisions for Continuing Jurisdiction of the Court</u>.  In addition to the continued jurisdiction after the Confirmation Date that is provided for as a matter of law by the Bankruptcy Code and the Rules of Bankruptcy Procedure, the Court shall retain exclusive jurisdiction for the following:

a.   To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any holder and the determination of such objections as may be filed to any Claims;

b.   To determine any and all applications for compensation and reimbursement pursuant to § 330 of the Code;

c. To determine any and all applications for the sale, transfer, disposition or abandonment of any of Debtor's assets.

d. To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof;

e. To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court.

f. To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan, including without limitation, any modifications to the Plan;

g. To cause the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

h. To consider the modification of this Plan after the Confirmation Date as allowed pursuant to the Rules of Bankruptcy Procedure and the Code;

I. Except as otherwise provided in the Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan;

j. To determine all questions and disputes regarding title to Debtor's assets, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the Confirmation Date, including but not limited to, any rights of Debtor to recover assets pursuant to the provisions of the Code or applicable state or federal law;

k. To enter a Final Order concluding and terminating this case;

l. To determine such other matters as may be provided for in the Confirmation Order.

## VIII. CONSEQUENCES OF LIQUIDATION

To obtain confirmation of the Plan, Debtor must show that each holder of an impaired Claim or interest has accepted the Plan, or that each holder will receive or retain under the Plan on account of the holders claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount such holder would so receive or retain if Debtor were liquidated under Chapter 7 of the Code on said date.

Were the Debtor converted to Chapter 7, it would lose its principal asset, 2116 Stokers Lane. The Debtor would lose much of its base for its congregation and without membership, it may not be able to generate the income to service the unsecured debt.

## IX. CONFIRMATION PROCEDURES

The Plan cannot be consummated unless it is confirmed by the Court. Confirmation of the Plan requires that among other things, either (I) each Class of Claims that is impaired by the Plan has voted to accept the Plan by the requisite majority, or (ii) the Plan is determined by the Court to be fair and equitable, as defined by the Code, with respect to Classes of Claims or Interests that have rejected the Plan. The Code also requires that the confirmation of the Plan be in the "best interests" of all holders of claims and interests.

The Debtor believes that the Plan meets the classification requirements of the Code, which requires that all Claims in a Class be "substantially similar." Disputes regarding the proper classification of Claims or Interests not specifically classified in the Plan shall be resolved pursuant to the procedures established by the Code, the Rules and other applicable law.

A. <u>Creditors Eligible to Vote</u>. Only the votes of Classes whose Claims are impaired by the Plan will be counted in connection with the confirmation of the Plan. Generally, and subject to the specific provisions of § 1124 of the code, a Class is "impaired" if its legal, equitable or contractual rights attaching to the Claims or Interests of the Class are modified by the Plan. All classes of claims are impaired under the Plan except Class 1, and those impaired classes are entitled to vote to accept or reject the Plan. In determining acceptance of the Plan, votes will be counted only if submitted by a Holder of an Allowed Claim. Claims may be allowed by the Court for voting purposes only.

B. <u>Acceptances Necessary to Confirm the Plan</u>. For the Plan to be accepted and thereafter confirmed, it must be accepted by at least one Class of Claims which is impaired by the Plan. Under § 1126 of the Code, an impaired Class is deemed to have accepted the Plan if: (I) with respect to a Class of Claims, votes representing at least two-thirds (2/3) in amount and more than one-half (½) in number of Allowed Claims that have voted in the Class have accepted the Plan; and (ii) with respect to a Class of Interests, votes representing at least two-thirds (2/3) in amount of those Allowed Interests that have voted have accepted the Plan; provided that the vote of any Holder of an Allowed Claim or Allowed Interest whose acceptance or rejection of the Plan was not made in good faith, as determined by the Court, will not be counted.

Unless an Impaired Class unanimously accepts the Plan, the Court, in order to confirm the Plan, must independently determine that the Plan provides to each Holder of

15

a Claim or Interest, as the case may be, of such Class a recovery which has a value, as of the Effective Date, at least equal to the value, as of the Effective Date, of the distribution which such Holder would receive or retain if Debtor were liquidated under Chapter 7 of the Code on the Effective Date. The Debtor believes that the Disclosure Statement and Plan will enable the Court to make this determination.

      C.    <u>Manner of Voting</u>. In voting for or against the Plan, please use only the ballot sent to you with this Plan and Disclosure Statement. If a Person has an Allowed Claim in more than one (1) Class, such Person may vote multiple ballots. Holders of Allowed Claims entitled to vote to accept or reject the Plan may vote by completing, dating, signing and mailing the enclosed ballot to:

>    Kevin S. Key
>    222 Second Avenue North
>    Suite 360-M
>    Nashville, TN 37201

In order for a ballot to be counted, the ballot must be received at the above address on or before _____, 2008 at 4:00 p.m. A ballot, once submitted, cannot be withdrawn or modified except as provided under the Code.

      D.    <u>Confirmation Without Acceptance</u>. Section 1129(b) of the Code provides that the Plan may be confirmed by the Court despite not being accepted by every impaired Class if: (I) at last one impaired Class of Claims has accepted the Plan; and (ii) the Courts finds that the Plan does not discriminate unfairly and is fair and equitable to the rejected Classes. Among other things, such a finding would require a determination by the Court that the Plan provides that no Holder of an Allowed Claim or Allowed Interest junior to the rejecting Class will receive or retain any property or payment under the Plan, until or unless such rejecting Class is Paid in Full.

      Debtor reserves the right pursuant to § 1129(b) of the Code to request the Court to confirm the Plan if all of the applicable requirements of § 1129(a) of the Code have been met. In addition, Debtor reserves the right pursuant to § 1129(e) of the Code to request the Court to strike any ballot rejecting the Plan cast by any Holder of a Claim that was not cast in good faith.

      E.    <u>Hearing on Confirmation of the Plan</u>. The Court has set _____, 2008 at _____ __.__., Central Time, in Bankruptcy Courtroom Two, Customs House, 701 Broadway, Nashville, Tennessee for the Confirmation Hearing to determine whether the Plan has been accepted by the requisite number of Holders of Claims and whether the other standards for confirmation of the Plan have been satisfied. The hearing may be adjourned from time to time without further written notice other than an announcement in open Court. Each Holder of a Claim will receive this Plan and Disclosure Statement the Notice of Hearing on Confirmation Plan.

F.  <u>Effect of Confirmation</u>.  The Confirmation Order shall discharge all Claims held against Debtor to the extent allowed pursuant to § 1141 of the Code and shall constitute an injunction against the pursuit of any Claim except as otherwise provided in the Plan, and Holders of Claims shall be precluded from asserting against Debtor or Debtor's Assets any Claim based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan.

## X.  OTHER MATTERS

Counsel for Debtor-in-Possession, Kevin S. Key, whose address is 222 Second Avenue North, Suite 360-M, Nashville, Tennessee 37201, has compiled a depository of certain documents for review by interested parties.  These documents include:

1. All schedules, the statement of affairs, and the statement of executory contracts, filed by Debtor-in-Possession during the case;

2. All monthly reports filed by Debtor during the case.

3. Debtor's applications and orders entered by the Court in connection with their employment of certain professional, including attorneys;

4. Copies of all other pleadings filed in this case;

5. Debtor's United States income tax returns;

These documents may be inspected at the office of Kevin S. Key during normal business hours, and may be photocopied at a cost of twenty-five ($.25) per page. Persons desiring to inspect or copy the documents should contact Kevin S. Key at said offices, telephone number (615) 256-4080.

Dated this 15 day of April, 2008.

/s/ Clinton Lewis, Sr.
CLINTON LEWIS, SR.
President and Pastor

17

Respectfully submitted by:


/s/ Kevin S. Key_____
KEVIN S. KEY        #9519
Attorney for Debtor
222 Second Avenue North
Suite 360-M
Nashville, TN  37201
(615) 256-4080
keykevin@bellsouth.net